E-FILED
Thursday, 13 December, 2018  09:53:30 AM
Clerk, U.S. District Court, ILCD

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   18-mj-6463
[illegible fine print describing electronic devices] )
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2251, 2252, 2252A, | Production, distribution, receipt, possession of child pornography |
| 18 U.S.C. § 2422 | Coercion and enticement of a minor |

The application is based on these facts:

Please see attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ SA Shane Hornibrook, USSS

*Applicant's signature*

SA Shane Hornibrook, USSS

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

/s/ Jonathan E. Hawley

*Judge's signature*

Date: _____12/12/2018_____

City and state: Peoria, Illinois          Hon. Jonathan E. Hawley, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property — digital devices — which are currently in law enforcement possession, and the extraction from that property of electronically stored information as described in Attachment B. The DEVICES to be searched are more particularly described and depicted in Attachment A to this Affidavit and Search Warrant Application.

2.  I, Shane M Hornibrook, being duly sworn, depose and state that I am a Special Agent with the U.S. Secret Service and have so been employed by the Secret Service since September 2014. I have been a commissioned Special Agent with the Secret Service since July, 2018. I am currently assigned to the U.S. Secret Service, Springfield Resident Office, where my duties include leading and assisting investigations involving sexual exploitation of minors and child pornography. I have had the opportunity to observe and provide assistance in cases involving child pornography (as defined in 18 U.S.C § 2256). As a commissioned Special Agent of the U.S Secret Service, I am authorized to make arrests for any offense against the United States committed in my presence or for any felony recognizable under the laws of the United States, in accordance with 18 U.S.C., § 3056.

3.  I submit there is probable cause to believe that evidence, fruits, and instrumentalities of the crimes of the production, distribution, receipt and possession of child pornography, and coercion and enticement of a minor, in violation of 18 U.S.C. §§ 2251, 2252, 2252A, and 2422, are located on the DEVICES.

4.  The following information is known to me or was reported to me by law enforcement officers and other cooperating individuals. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known concerning this investigation.

## INVESTIGATION

5.  On November 12, 2018, the Geneseo, IL, Police Department (GPD) received a complaint
    from the parents of "A.A." in reference to text messages of a sexual nature being received
    by "A.A.", their minor child, on Facebook messenger. The messages were sent to "A.A."
    by a Facebook account using the name Tristian S. Blank. The messages included statements
    by Blank indicating his desire to perform oral sex on "A.A." and attempting to make
    arrangements to do so. The messages also referred to naked photos sent by Blank to "A.A."
    that "A.A." had since deleted. GPD requested assistance from Sergeant Minx, Kewanee,
    IL, Police Department (KPD), who took over "A.A.'s" Facebook account with "A.A.'s"
    permission, and began corresponding with Blank.

6.  On November 14, 2018, while posing as "A.A." on Facebook messenger, Sergeant Minx
    informed Tristian Blank to contact him, "A.A.", through a telephone number that he
    provided to Blank. Sergeant Minx, while posing as "A.A." also provided the number to a
    person "A.A." had been in contact with named "Jess." "Jess," believed by law
    enforcement to be Blank, contacted the number provided by Sergeant Minx. Sergeant
    Minx informed "Jess" and Blank that he, "A.A.", was 16 years of age. Sergeant Minx
    arranged a meeting for approximately 10:00 P.M. with Blank and "A.A." at the Geneseo
    McDonalds, during which Blank was supposed to perform oral sex on "A.A." Sergeant
    Minx patrolled the area of McDonalds beginning at approximately 9:00 P.M. while GPD
    Detectives remained in the McDonalds parking lot. At approximately 10:40 P.M., GPD
    Detectives observed a dark colored passenger car park in the McDonalds parking lot with
    the license plate, Suzy149. The GPD Detectives identified this vehicle to belong to Blank
    and identified the operator of the vehicle to be Blank. Blank was then taken into custody
    by GPD. While being interviewed at GPD, Tristian Blank made admissions to performing
    a sexual act with another minor, being aware of the minor's age being 16, in the Goodwill
    parking lot in Geneseo, IL. Blank further made admissions that the female "Jess" who
    was in contact with Sergeant Minx when Minx was posing as "A.A.", was actually Blank

himself. Blank admitted to using his cellphone and messaging apps on his iPod to communicate with "A.A." and other minors.

7. On November 19, 2018, GPD Sergeant Sleaford applied for and received State of Illinois Search Warrants for Tristian Blank's cellphone, iPod, and vehicle which were seized from Blank's person at the time of his arrest. The completion of the searches revealed evidence consistent with child pornography including, but not limited to, images and videos of young males naked and/or masturbating on Blank's cellphone and iPod. The images and videos were contained within an "images" folder and within approximately sixty-eight other file folders. Some of the file folders were labeled with names of individuals. Some of the images were contained in folders with generic names such as "basketball." Some of the images and videos are dated as far back as the summer of 2016.

8. Upon review of text messages located on Blank's cellphone, pursuant to the State of Illinois Search Warrant, GPD Sergeant Sleaford located a conversation from March of 2017 between Blank and "C.S.," who was known to GPD as a 16 year old minor. This conversation led to "C.S." being interviewed at Braveheart Child Advocacy Center in Cambridge, IL. During this interview "C.S." stated that Blank introduced and put "C.S" in contact with a female named "Jessica" who requested "C.S." to send nude images and videos of himself to her. After sending the images, "Jessica" stated she would disclose the images and videos to others if "C.S." did not perform sex acts with Blank. "C.S." went to a residence that Blank was supposedly house sitting at. While Blank used his own cellphone to video chat with "Jessica," Blank and "C.S" touched each other's genitals while "Jessica" watched. After this encounter "Jessica" continued to message "C.S." threatening to disseminate his images unless he performed more sex acts with Blank on camera for her. During the summer of 2017, "C.S." recalled meeting Blank at his residence in rural Geneseo. "C.S." stated he went to Blank's bedroom with him and that Blank used his cellphone to video chat "Jessica" while she messaged "C.S." and told him what she wanted "C.S." and Blank to do. "Jessica" began by instructing both males to touch each other.

'C.S.' described then being told to act like he was having sex with Blank. "C.S." described it as him being on top of Blank and thrusting. "C.S." and Blank were then directed to perform oral sex on each other, which "C.S." and Blank did. "Jessica" continued to message "C.S." threating him with disclosing his photos and trying to get him to again perform sex acts with Blank. "C.S." stated he finally told "Jessica" he did not care and refused to perform any more sex acts with Blank.

9.  Still photos of the conduct between Blank and "C.S." at Blank's residence in 2017 were recovered during the search of Blank's cell phone. The still photos show a task bar at the bottom of the photo and a portion of the keyboard of a Macbook Pro laptop computer. The still photos were found in a file folder on Blank's cell phone labeled with "C.S.'s" first name.

10. Upon review of Blank's iPod, pursuant to the State of Illinois Search Warrant, GPD Sergeant Sleaford located messages on Blank's iPod in which Blank is conversing with others about sexual fantasy on the social media application "KiK". The conversations include talk of obtaining photos and images from juvenile males, and comments about the attractiveness of certain young men. In these conversations Blank is being told what to do, and to pick several options for sexual fantasies with juvenile males. During these conversations, Blank also says that he owns a laptop, but that it is currently "broken."

11. On December 5, 2018, a State of Illinois Search Warrant was served on Blank's residence, 45 Tulip Ct., Geneseo, IL. Items seized during the execution of this search are listed on Attachment A. The State of Illinois Search Warrant for Blank's residence is labeled as Attachment C to this affidavit and is incorporated by reference.

## CHARACTERISTICS OF INDIVIDUALS THAT DISTRIBUTE, RECEIVE AND POSSESS CHILD PORNOGRAPHY

12. Based upon my experience and training, the following traits and characteristics are generally found to exist and be true in cases involving individuals who collect child pornography:

   a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

   b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

   c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC (Internet Relay Chat), newsgroups, instant messaging and other similar vehicles.

   d. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their

illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e. The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices or merely on scraps of paper.

f. The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft and damage their collections of illicit materials. They almost always maintain their collections in the privacy and security of their homes or other secure location.

13. The items listed on Attachment A are electronic devices which are known to contain and/or used for the primary purpose of a memory storage device. Examples of such electronic devices with memory storage capabilities are, but not limited to, iPods, tablets, cell phones, MP3 players, cameras, SD cards, memory disks, CD's, laptops, camcorder, adapter, video cassettes, external storage devices, hard drives, and flash drives.

14. I know that when an individual uses a digital device to produce, distribute, receive, and possess child pornography and/or to coerce or entice a minor, the individual's device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The digital device is an instrumentality of the crime because is used as a means of committing the criminal offense. The digital device is also likely to be a storage medium for evidence of crime. From my training and experience, I

believe that a digital device used to commit a crime of this type may contain data that is evidence of how the digital device was used; data that was sent or received; nots as to how the criminal conduct was achieved; records of internet discussions about the crime; and other records that indicate the nature of the offense and the identities of those perpetrating it.

15. DEVICES a, b, and c listed in Attachment A are currently in the lawful possession of and stored at the United States Attorney's Office, 211 Fulton Street, Suite 400, Peoria, in the Central District of Illinois. DEVICES d – ff in Attachment A are currently in the lawful possession of and stored with the United States Secret Service Resident Office, 3161 W. White Oaks Drive, Suite 201, Springfield, in the Central District of Illinois. Therefore, while all necessary authority to examine the DEVICES might already exist, I seek this additional warrant out of an abundance of caution to be certain than an examination of the DEVICES will comply with the Fourth Amendment and other applicable laws.

## TECHNICAL TERMS

16. Based on my training and experience, and information acquired from other law enforcement officials with technical expertise, I know the terms described below have the following meanings or characteristics:

    a. "Digital device," as used herein, includes the following three terms and their respective definitions:

        i. A "computer" means an electronic, magnetic, optical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device. *See* 18 U.S.C. § 1030(e)(1). Computers are physical units of equipment that perform information processing using a binary system to represent information. Computers

include, but are not limited to, desktop and laptop computers, smartphones, tablets, smartwatches, and binary data processing units used in the operation of other products like automobiles.

ii. "Digital storage media," as used herein, means any information storage device in which information is preserved in binary form and includes electrical, optical, and magnetic digital storage devices. Examples of digital storage media include, but are not limited to, compact disks, digital versatile disks ("DVDs"), USB flash drives, flash memory cards, and internal and external hard drives.

iii. "Computer hardware" means all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, modems, routers, scanners and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

b. "Wireless telephone" (or mobile telephone, or cellular telephone), a type of digital device, is a handheld wireless device used for voice and data communication at least in part through radio signals and also often through "wi-fi" networks. When communicating via radio signals, these telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones, traditional "land line" telephones, computers, and other digital devices. A wireless

telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of applications and capabilities. These include, variously: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages, e-mail, and other forms of messaging; taking, sending, receiving, and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; global positioning system ("GPS") locating and tracking technology, and accessing and downloading information from the Internet.

c. A "tablet" is a mobile computer, typically larger than a wireless phone yet smaller than a notebook, that is primarily operated by touch-screen. Like wireless phones, tablets function as wireless communication devices and can be used to access the Internet or other wired or wireless devices through cellular networks, "wi-fi" networks, or otherwise. Tablets typically contain programs called applications ("apps"), which, like programs on both wireless phones, as described above, and personal computers, perform many different functions and save data associated with those functions.

d. "Computer passwords and data security devices" means information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

e. Internet Protocol ("IP") Address is a unique numeric address used by digital devices on the Internet. An IP address, for present purposes, looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 149.101.1.32). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f. "Internet Service Providers," or "ISPs," are entities that provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet, including via telephone-based dial-up and broadband access via digital subscriber line ("DSL"), cable, dedicated circuits, fiber-optic, or satellite. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name, a user name or screen name, an e-mail address, an e-mail mailbox, and a personal password selected by the subscriber. By using a modem, the subscriber can establish communication with an ISP and access the Internet by using his or her account name and password.

g. "Encryption" is the process of encoding messages or information in such a way that eavesdroppers or hackers cannot read it but authorized parties can. In an encryption scheme, the message or information, referred to as plaintext, is encrypted using an encryption algorithm, turning it into an unreadable ciphertext. This is usually done with the use of an encryption key, which specifies how the message is to be encoded. Any unintended party that can see the ciphertext should not be able to determine anything about the original message. An authorized party, however, is

able to decode the ciphertext using a decryption algorithm that usually requires a secret decryption key, to which adversaries do not have access.

17. Based on my knowledge, training and experience, I know that the DEVICES have capabilities that allow them to serve as wireless telephones, digital cameras, and portable media players. In my training and experience, examining data stored on the devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device as well as evidence relating to the commission of the offense under investigation.

## AUTHORIZATION TO SEARCH AT ANY TIME OF THE DAY OR NIGHT

18. This warrant seeks only permission to examine the DEVICES that have already come into law enforcement possession. The execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable and good cause for this warrant to be executed at any time, day or night, outside the hours of 6:00 a.m. to 10:00 p.m.

## CONCLUSION

I respectfully submit that this affidavit supports probable cause for a warrant to search the electronic or magnetic storage media or digital devices described in Attachment A and to seize the items described in Attachment B.

Respectfully submitted,

/s/ SA Shane Hornibrook, USSS

Shane Hornibrook
Special Agent
United States Secret Service

**Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d)**
**Dec 12, 2018**
/s/  Jonathan E. Hawley

UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **DESCRIPTION OF THE PROPERTY TO BE SEARCHED**

The following DEVICES constitute property to be searched:

   a. Apple iPod music device – Red Case
   b. Nexus Tablet
   c. Samsung Galaxy s7, bearing S/N: G30rzkausc
   d. RCA MP3 player – Silver
   e. Nikon cool pix camera with sd card (16 gigabyte storage)
   f. Sandisk sd card memory device – Blue
   g. Chrome memory disk – Black (2 gigabyte storage)
   h. Sandisk Stick memory device (32 gigabyte storage)
   i. Compact Disks (Quantity: 6)
   j. Apple iPhone, bearing S/N: Ccqnn3llfmj
   k. Asus Laptop Computer, Model: Q524U; bearing S/N: H4N0WU029530149
   l. Asus Laptop Computer, Model: X55A; bearing S/N: C7N0BC252642288
   m. RCA Music Device, bearing S/N: Faajll81a0940
   n. Sandisk Stick memory device (32 gigabyte storage)
   o. Panasonic camcorder, FCC id: acj927127k
   p. Apple iPod music device – Blue Case
   q. Finepix z red camera, bearing S/N: 8s731136
   r. Samsung Phone, Model: slide phone – Gray
   s. Motorola Phone, Model: razor
   t. Motorola Phone, model: T731c; bearing S/N: Snn5588a
   u. Asus Laptop Computer, Model: X551C; bearing S/N: E2n0cx540123081
   v. Motorola Phone, Model: Electrifym; bearing S/N: Che353ab
   w. Cooler Master Desktop Computer, Model: CPU; bearing S/N: Rc350kkr5001113900287
   x. Sandisk Adapter
   y. Emtec memory stick (16 gigabyte storage)
   z. Camcorder
   aa. 3 video cassettes
   bb. External Hard Drive, Model: EasyStore; bearing S/N: WXU1A277D2EN
   cc. San Disk Flash Drive – Black, bearing S/N: BH1007OCAB (4 gigabyte storage)
   dd. Dell laptop Computer, bearing S/N: DFXQ7F2
   ee. Sandisk Gorilla Drive (128 gigabyte storage)
   ff. Toshiba External Storage Device, bearing S/N: 8565TKFRTTT1 (1 Terabyte storage)

These DEVICES have been inventoried under a Geneseo Police Department Evidence Form #18-064 for case #18-003258.

The DEVICES listed on **a, b, and c** are currently in the lawful possession of and stored at the United States Attorney Office in Peoria, IL (211 Fulton St., Suite 400, Peoria, IL 61602).

The DEVICES listed on **d through ff** are currently in the lawful possession of and stored with the United States Secret Service at the Springfield, IL Resident Office (3161 W White Oaks Dr., Suite 201, Springfield, IL 62704).

This warrant authorizes the forensic examination of the DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

## **ITEMS TO BE SEARCHED FOR AND SEIZED**

With respect to each device to be searched, any and all evidence or contraband (in any format or medium) relating to the production of visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251, and/or the mailing, distribution, receipt, possession, or accessing with the intent to view child pornography, in violation of 18 U.S.C. § 2252 and 2252A, and/or the evidence of coercion and enticement, in violation of 18 U.S.C. § 2422 including, but not limited to the following items:

1. Any and all visual depictions of minors engaging in sexually explicit conduct, child pornography, and child erotica.

2. Any and all visual depictions of minors.

3. Any and all notes, records, documents, correspondence, communications, invoices, and/or materials pertaining to:

    a. The production of visual depictions of minors engaging in sexually explicit conduct and/or the mailing, distribution, receipt, possession, or accessing with the intent to view child pornography;

    b. The identity of persons producing visual depictions of minors engaging in sexually explicit conduct or mailing, distribution, receipt, possession, or accessing with the intent to view child pornography;

    c. Contact, and any other activities, with minors who are visually depicted while engaging in sexually explicit conduct; and

    d. Contact with minors for the purpose of producing visual depictions of minors engaging in sexually explicit conduct, for the purpose of engaging in sexually explicit conduct with minors, or for the purpose of grooming minors to engage in sexually explicit conduct;

    e. The preparation, purchase, and/or acquisition of names to be used in connection with the production of visual depictions of minors engaging in sexually explicit conduct and/or the purchasing, selling, or trading of child pornography.

    f. The existence of sites on the internet that contain child pornography or that cater to those with an interest in child pornography;

g. Membership in online groups, clubs, or services that provide or make accessible child pornography to members;

h. Accounts with an Internet Service Provider (ISP);

i. Online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage; and

j. Social media accounts

4. Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by and/or in contact with the user(s) of the device for the purpose of producing visual depictions of minors engaged in sexually explicit conduct and/or distribution, receipt, or possession of child pornography.

5. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital files), pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256 (8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 (2).

6. Any and all files, logs, or data indicating the existence and/or use of any software or program designated to eliminate digital data by deleting and/or overwriting the digital data.

7. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

8. Evidence of the attachment of other devices to the devices, such as other storage devices, disks, CD-ROMs/DVDs, external hard drives or similar containers for electronic storage;

9. Passwords encryption keys and other devices that may be necessary to access the computers or digital devices.

10. Contextual information necessary to understand the evidence in this attachment.

As used in this attachment, the definitions of terms/phrases (i) "minor"; (ii) "sexually explicit conduct"; (iii) "visual depiction"; and (iv) "child pornography" are set forth in 18 U.S.C. § 2256 (1), 2256 (2), 2256 (5), 2256 (8), respectively. The term "child erotica" includes items or materials that may be sexually arousing to persons sexually attracted to minors but which are not in and of themselves obscene and/or do not necessarily depict minors in sexually explicit poses or position

# IN THE CIRCUIT COURT OF THE 14TH JUDICIAL CIRUIT
# HENRY COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS        )
                                           )        NO. 18-MR- ____
              -v-                          )
                                           )

45 Tulip Court Geneseo Illinois
Being a two story residence with attached garage
and brick on the ground level floor with the numbers
"45" on the front of the residence to the left of the front door

              Defendant.                   )


## COURT DOCKET

✔Sergeant Sleaford sworn; evidence heard; Probable Cause Found; Search Warrant Issued

this date at 12:04 PM. Dan

## IN THE CIRCUIT COURT OF THE 14TH JUDICIAL CIRUIT
## HENRY COUNTY, ILLINOIS

NO. 18-MR-____

Sergeant Benjamin C. Sleaford, Geneseo Police Department, complainant, now appears before the undersigned Judge of the Circuit Court of said County and requests the issuance of a search warrant to search the residence of 45 Tulip Court, Geneseo Illinois. Said residence being a two story house with an attached garage, with brick on the front of the ground level and the numbers "45" to the left of the front door.

**For any and all electronic devices capable of sending or receiving messages, pictures, videos, or other electronic file, to include any computer, tablet, cellular phone, or any other device, and any devices capable of storing digital images, videos, recordings, or other electronic records; photographs of any and all bedrooms**

which constitute evidence of the crime of **Solicitation of Child Pornography, Possession of Child Pornography, Grooming, Indecent Solicitation of a child, Traveling to meet a minor and Distribution of explicit material to a minor**. Complainant says that he has probable cause to believe, based upon the following facts, that the above-listed things to be seized are now located upon the premises set forth above:

1. Your affiant, Sergeant Benjamin C. Sleaford , is a Police Officer with the Geneseo Police Department and has been employed by the Geneseo Police Department for 13.5 years. As part of your affiant's duties as a Police Officer, he investigates criminal acts including the above listed offenses

2. I submit this Complaint for the limited purpose of showing that there is sufficient probable cause to support issuing a warrant to search and analyze the items identified here. This Complaint does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this Complaint are related in substance and in part only.

3. Your affiant is aware that on November 12, 2018 Geneseo Police Officers took a report from Donald Anderson and his wife Christina Anderson reference text messages of a sexual nature being received by their minor child "A.A" on Facebook messenger.

4. Your affiant is aware that these messages were coming from a subject named Tristan S. Blank 07-02-1997, with whom "A.A." was employed at Fareway grocery store in Geneseo.

5. Your affiant is aware that after the Andersons reported the situation Det. Chavez sought the assistance of SGT Michael Minx of the Kewanee Police Department who was able to set up contact with Tristan Blank by posing as "A.A.". Your affiant is further aware that SGT Minx was able to arrange a meeting with Tristan Blank at the Geneseo McDonalds during which Blank was supposed to perform oral sex on "A.A."

6. Your affiant was present when Geneseo Police made contact with Tristan Blank at the Geneseo McDonald's and placed him under arrest.

7.  Your affiant was present during an interview during which Tristan Blank admitted to performing a sexual act with a minor with the initials "C.V." in the Goodwill parking lot in Geneseo. Your affiant is further aware that Tristan Blank was aware at the time that "C.V." was 16 years of age.

8.  Your affiant was present for a forensic interview of "C.V." at Braveheart Child Advocacy Center during which "C.V." described the encounter during which Tristan Blank performed oral sex on him in the parking lot shared by Goodwill and Napa Auto Parts.

9.  Your affiant is aware Blank's cell phone and an Ipod located on Blank's person upon his arrest were seized and downloaded as a result of the investigation. Your affiant has the to opportunity to review the downloads of both Blank's phone and Ipod.

10.  Your affiant reviewed the download of Blank's phone revealed he had numerous folders labeled with names of males of his phone. Located in these folders were images and videos of young males. The videos and images were of the males naked, and showed their genitalia. Some of the videos were of the young males masturbating. Further investigation of the videos and images have led to numerous juvenile victims being identified as the subjects in the images or videos.

11.  Your affiant reviewed the download of Blank's Ipod revealed even more explicate images and videos of young males. Again investigators have been able to identify some of the males as known local juveniles.

12.  Your affiant has reviewed text messages between Blank and several known juvenile victims. One of the text messages conversations your affiant has reviewed was between blank and C.S. The messages were from March of 2017 when C.S. would have been 16 years old. C.S. and Blank converse about a female who has pictures and images of both of them, who is directing Blank and C.S. to perform sexual acts on one another or else the female will send the images/videos to C.S. and Blank's friends.

13.  Your affiant is aware from his interview of Blank, that Blank created social media accounts using a female persona as a way to obtain videos/images from males.

14.  Your affiant is aware that on 12/05/18 C.S. was interviewed at Braveheart CAC in Cambridge Illinois. C.S. disclosed he first met Blank around the time he was finishing Junior High or starting High School. C.S. would play basketball with Blank and began to converse with him. Blank introduced C.S. to a girl C.S. knew as "Jessica Samms". "Jessica Samms" is a fake female persona created by Blank. C.S. ended up sending nude images or videos to "Jessica". "Jessica" then told C.S. he had to perform sex acts with Blank or else she would disclose his images or videos to others.

15.  C. S. disclosed he first met with Blank in the Spring of 2017 at a residence Blank was house sitting. Blank used his phone to video chat with "Jessica", and Blank and C.S. touched each other's genitals while "Jessica" watched.

16.  C.S. went on to say "Jessica" continued to message him, threatening to disseminate his images unless he performed more sex acts with Blank on camera for her. Blank recalled during the

summer of 2017 he met Blank at his residence in rural Geneseo. C.S. and Blank were in Blank's bedroom. Blank used his phone to video chat with 'Jessica" and positioned it so he and C.S. could be observed. Jessica would then message C.S. on C.S.'s phone and tell C.S. and Blank what to do. Jessica began by instructing both males to touch each other. C.S. described then being told to act like he was having sex with Blank. C.S. described it as him being on top of Blank and thrusting. C.S. and Blank were then directed to perform oral sex on each other, which C.S. and Blank did.

17. Jessica continued to message C.S. threating him with disclosing his photos and trying to get him to again perform sex acts with Blank. C.S. stated he finally told Jessica he did not care and refused to perform any more sex acts with Blank.

18. Your affiant has observed multiple images of a two males, who look very similar to Blank and C.S. performing oral sex on each other simultaneously, in a bedroom similar to other images on Blank's phones in which Blank was depicted by himself. One of the images your affiant observed appeared to include a computer task bar at the bottom of the images.

19. Your affiant has reviewed messages on Blank's Ipod in which Blank is conversing with others about sexual fantasy on the social media application KiK. The conversations include talk of obtaining photos and images from juvenile males, and comments about the attractiveness of certain young men. In these conversations Blank is being told what to do, and to pick several options for sexual fantasies with juvenile males. During these conversations, Blank also says that he owns a laptop, but that it is currently "broken."

20. Your affiant is aware Blank was in contact with multiple juvenile males using text messaging and other social media applications to communicate. Your affiant is also aware based on his training and experience a suspect can use multiple electronic devices or computers to message and communicate using the same social media platform. For example your affiant is aware and individual can use a phone, tablet, and a computer to message on the same Facebook messenger account. Your affiant is seeking this search warrant to locate and identify any other electronic devices Blank may have used to communicate with juvenile males or the others individuals from the KiK messages. Your affiant is also aware based on his training and experience that many suspects will store their child pornography on multiple devices, and even make backup copies of such images. Your affiant is also seeking this search warrant to locate and seize any additional storage media that could contain child pornography. Finally, your affiant is seeking this search warrant to photograph any and all bedrooms to use for comparison purposes of images already discovered on Blank's phone and Ipod.

_____
Complainant

Subscribed and sworn
before me on this _5 th_
day of _Dec_   2018

_____
Judge

## IN THE CIRCUIT COURT OF THE 14TH JUDICIAL CIRUIT
## HENRY COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS    )
                                      )     NO. 18-MR- \_\_\_\_
        -v-                        )
                                      )

45 Tulip Court Geneseo Illinois
Being a two story residence with attached garage
and brick on the ground level floor with the numbers
"45" on the front of the residence to the left of the front door
                                           )
                    Defendant.         )

### SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS, ON THIS DAY **Sergeant Ben Sleaford, Geneseo Police Department,** COMPLAINANT, HAS SUBSCRIBED and sworn to a complaint for search warrant before me.  Upon examination of the complaint I find that it states facts sufficient to show probable cause and I therefore command that the residence at **45 Tulip Court, Geneseo Illinois.  Said residence being a two story house with an attached garage, with brick on the front of the ground level and the numbers "45" to the left of the front door,** be searched and the following instruments, articles, and things which constitute evidence **of the crimes of Solicitation of Child Pornography, Possession of Child Pornography, Grooming, Indecent Solicitation of a child, Traveling to meet a minor and Distribution of explicit material to a minor.**

**be seized therefrom:**

**For any and all electronic devices capable of sending or receiving messages, pictures, videos, or other electronic file, to include any computer, tablet, cellular phone, or any other device, and any devices capable of storing digital images, videos, recordings, or other electronic records; photographs of any and all bedrooms**

I further command that a return on anything so seized shall be made without any unnecessary delay before the Presiding Judge or before any court of competent jurisdiction.

_____
JUDGE

Date of Issuance: \_\_\_\_\_12/5/18\_\_\_\_\_

Time of Issuance: \_\_\_\_12:04 PM\_\_\_\_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## RETURN NOT EXECUTED

I did not execute this warrant within 96 hours from the time of issuance and it is hereby returned to the Court as void and not executed.

_____
Officer


Date Returned: _____

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
HENRY COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS

-vs-                                    No. 18-MR-

45 Tulip Court Geneseo Illinois
Being a two story residence with attached garage
And brick on the ground level floor with the numbers
"45" on the front of the residence to the left of the front door

## **INVENTORY**

Now comes  Ben Sleaford a peace officer, and presents unto the Court an inventory of all
instruments, articles or things seized on a search with warrant of the (person) , (premises) of
45 Tulip Court Geneseo Illinois, being a two story residence with attached garage and brick on the ground
level floor with the numbers "45" on the front of the residence to the left of the front door

On _____, 20_____, at _____ M. the same being fully hereinafter set
out in the following particulars, to-wit:

_____

_____

_____

_____

Subscribed and sworn to
before me this _____ day of
_____, 20_____
                                    _____
                                              Peace Officer

_____
Notary Public

## **ORDER**

IT IS HEREBY ORDERED that _____
shall retain custody of the above items pending further proceedings.


ENTERED:                        _____
                                JUDGE.